**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

PUERTO RICO PORTS AUTHORITY

    **Plaintiff(s)**

        v.

PCI INTERNATIONAL INC., et al

    **Defendant(s)**

                         **CIVIL NO.**  96-1969(JAG)

---

### OPINION AND ORDER

GARCIA-GREGORY, D. J.[1]

On March 23, 2001, defendant Carreras Trucking, Inc. ("Carreras"), moved for partial summary judgement against plaintiff Puerto Rico Ports Authority's ("PRPA") claims, (Docket No. 163). Carreras asks the Court to dismiss PRPA's claims brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") since Carreras does not meet the criteria set forth in CERCLA in order to be held liable as a Potentially Responsible Person.  PRPA did not oppose Carreras's motion.  For the reasons discussed below, Carreras's motion is GRANTED.

### FACTUAL BACKGROUND

Carreras is a corporation organized and existing under the laws of Puerto Rico, having its principal place of business in San

---

[1]     Alejandro J. Cepeda-Díaz, a second year student at the University of Puerto Rico School of Law, assisted in the research and preparation of this opinion.



Civil No. 96-1969(JAG)                                    2

Juan, Puerto Rico.  At all pertinent times, Carreras, being duly
licensed by the Public Service Commission, was engaged as an
independently contracted carrier for different industrial materials
and substances, including caustic soda, to and from various
locations in Puerto Rico for industrial use.  As part of its
business, Carreras has never engaged in transportation of caustic
soda to any facility for disposal.

On December 21, 1973, PRPA, as owner of approximately 2.6
acres of land located at the port of Arecibo, Puerto Rico, entered
into a standard form land lease agreement with PCI for the period
of ten years, with an option to extend.  According to Article VII
of the agreement, PCI was authorized to install such improvements
on the facility as it deemed appropriate or necessary for the
receipt, storage, and distribution of liquid chemical waste.
Article X of the agreement acknowledged PCI's legal title to such
improvements during the lease term.  Furthermore, it expressly
stated that the legal title to such improvements would be vested on
PRPA upon the termination of the contract, except that PRPA could
require their removal and/or demolition at PCI's expense.

On or about 1983, PCI constructed and installed at the
facility a 1.2 million gallon above ground tank for the receipt,
storage, and distribution of rayon grade caustic soda.  Upon
completion of the tank, PCI entered into agreements with other

Civil No. 96-1969(JAG)                                                        3

entities for the storage and delivery of caustic soda to and from the tank.

On June 19, 1986, PCI entered into a second standard form agreement with PRPA for the lease of the Arecibo facility for a new term of ten years.  This second agreement included the above described elements contained in the December 21, 1973 agreement. During the term periods of both agreements, PCI received only two shipments of caustic soda, one on June 28, 1986 and the other on January 31, 1987.  Both shipments were unloaded at the Arecibo port facility under the supervision of PRPA.

On August 6, 1987, PCI and Carreras executed a conditional "Buy and Sell Agreement" whereby, subject to the written consent of PRPA, PCI would assign and transfer to Carreras the lease Agreement with PRPA, along with other specifically described leasehold improvements and inventory, including the 1.2 million gallon tank. Pursuant to Paragraph No. 4, at page 2 of the "Buy and Sell Agreement," (Docket No. 163, Exhibit 9), in the event that PRPA did not provide its written authorization, the "Buy and Sell Agreement" would be deemed "rescinded and without any force or effect or ulterior consequence ... the parties each reverting to the state of affairs existing prior to the execution of the present Buy and Sell Agreement."  The condition was due to the language of PRPA's standard form lease agreements, which, specifically precludes any transfer or assignment of the lease or any interest contained

Civil No. 96-1969(JAG)                                               4

therein without PRPA's prior written consent.  PRPA never issued
the written authorization.  Therefore, the "Buy and Sell Agreement"
between PCI and Carreras was rendered ineffective and was never
consummated.

On September 12, 1988, PRPA terminated the second agreement
with PCI and advanced PCI's "abandonment of the site" as
contractual cause for the termination.  In accordance with Article
X of the Agreement, on the effective date of termination, legal
title to all structural additions or improvements made by PCI,
including the 1.2 million gallon above ground tank, vested on PRPA
free of any liens and encumbrances.

On or about the early part of 1989, American International
Commercial, Inc. ("AIC"), approached PRPA to lease the Arecibo
facility.  On May 6, 1989, AIC, under the guidance of PRPA,
entered into an Option Agreement with PCI for the purchase of all
improvements "owned by PCI" at the Arecibo facility at a cost of
$60,000.00.  The transaction was subject to PRPA's approval and to
PCI's termination of its independent carrier contract.

Meanwhile, after September 12, 1988, Carreras continued to
have sporadic access to the Arecibo facility.  On August 12, 1989,
Carreras advised the Puerto Rico Environmental Quality Board
("EQB") that a release of approximately 20 to 30 gallons of oil had
occurred at the site.  Carreras immediately undertook efforts to
clean the spilled oil from the ground.  On January 24, 1990, the

Civil No. 96-1969(JAG)                                                    5

EQB issued an Administrative Order directing the clean up of the non-hazardous substance.  On May 1990, Carreras advised EQB that the clean-up of the spilled oil had been completed.  Carreras further informed EQB that an estimated 6,000 gallons of caustic soda remained in the 1.2 million gallon above ground tank and that no activity had been conducted on caustic soda in excess of six months and provided EQB with all the corresponding manifest documents.

To certify the total clean up of the spilled oil to the EQB and PRPA, Carreras contracted Quantum Laboratories ("Quantum").  On July 26, 1990, Quantum submitted an Analysis Report confirming negative results and normal *pH* background of all corresponding soil samples.  Upon completion of the clean up and sampling, Carreras discontinued all access to the site.

On December 4, 1989, PRPA entered into a three year standard form lease Agreement of the Arecibo facility with AIC.  The general terms and conditions of the agreement with AIC are essentially identical to those in PRPA's agreements with PCI.  On April 10, 1991, PRPA filed an action for eviction and collection of money against AIC pursuant to its default in rent payments and general abandonment of the facility.  Furthermore, PRPA sought the confiscation of AIC's compliance bond.  On February 19, 1993, a default judgement was entered against AIC.

Civil No. 96-1969(JAG)                                          6

     Routine inspections of the site by PRPA's Ismael García-
Cabrera on July 12, 1993 and December 2, 1993, respectively,
revealed that the property was in a state of abandonment and showed
evidence of trespassers, but did not show any sign of
contamination.  Following the inspections, Mr. García recommended
that the area be fenced and that proper signs be put up to prevent
the entry of trespassers onto the premises.

     On January 29, 1994, Mr. García and Mr. José Nora inspected
the site and reported that a spill of caustic soda had occurred
after the hatch or manhole cover on the 1.2 million gallon above
ground tank had been removed.  Deposition testimony from Mr. García
reveals that during the 1993 inspections it was apparent that cars
and trucks could easily enter the site and that the facility was
being used as an illegal dump by unknown third parties.  Mr. García
further testified that the burnt vegetation observed during the
January 29, 1994, inspection had not been observed during the 1993
inspections of the same area.  Finally, Mr. García testified that
his recommendations to PRPA to put up fences and signs had been
ignored.

     In his testimony, PRPA's Mr. José Nora states that, upon the
observed circumstances at the facility on January 29, 1994, it was
apparent that the tank's manhole cover had been removed by
trespassers and that the first indications of any release or spill
of caustic soda at the site were noted on January, 1994.  PRPA has

Civil No. 96-1969(JAG)                                                    7

proffered no evidence even hinting at the possibility of any release or spill of caustic soda at the facility at any time prior to January 1994.

Furthermore, the testimony of Mr. Virgilio Acevedo, Civil Engineer and corporate officer designated by PRPA, acknowledged that if any spill of caustic soda had occurred on or prior to 1990 it would have been detected in the soil samples and *pH* tests conducted by Quantum Laboratories on May 1990. The testimony of Mr. Acevedo is consistent with that of other PRPA representatives who indicate that the caustic soda spill could not have taken place more than 5 to 12 months prior to its discovery in January 1994.

## DISCUSSION

A. <u>Summary Judgment Standard</u>

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>See</u> <u>Santiago-Ramos v.</u> <u>Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a

Civil No. 96-1969(JAG)                                      8

judgment  as  a  matter  of  law."    Fed.R.Civ.P.  56(c).    The  party

moving for summary judgment bears the burden of showing the absence

of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).

Once a properly supported motion has been presented before the

court,  the  opposing  party  has  the  burden  of  demonstrating  that  a

trial worthy issue exists that would warrant the court's denial of

the  motion  for  summary  judgment.    For  issues  where  the  opposing

party bears the ultimate burden of proof, that party cannot merely

rely on the absence of competent evidence, but must affirmatively

point  to  specific  facts  that  demonstrate  the  existence  of  an

authentic dispute.  Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st

Cir. 2000).

In  order  for  the  factual  controversy  to  prevent  summary

judgment the contested fact must be "material" and the dispute over

it must be "genuine."  "Material" means that a contested fact has

the potential to change the outcome of the suit under the governing

law.  The issue is "genuine" when a reasonable jury could return a

verdict for the nonmoving party based on the evidence.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled

that  "[t]he  mere  existence  of  a  scintilla  of  evidence"  is

insufficient  to  defeat  a  properly  supported  motion  for  summary

judgment."  Id., at 252.  It is therefore necessary that "a party

opposing summary judgment [] present definite, competent evidence

Civil No. 96-1969(JAG)                                          9

to rebut the motion." <u>Maldonado-Denis v. Castillo-Rodriquez</u>, 23
F.3d 576, 581 (1st Cir. 1994).

   To make this assessment in a given case, the court "must view
the entire record in the light most hospitable to the party
opposing summary judgment, indulging in all reasonable inferences
in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115
(1st Cir. 1990). When carrying out that task, the court may safely
ignore "conclusory allegations, improbable inferences, and
unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco
Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

B.   <u>Carreras's motion for summary judgment.</u>

   Carreras argues that it can not be held liable for
contribution of any response costs incurred in relation to the
clean up of the caustic soda spill because it does not meet the
required statutory profile under Section 107(a) of CERCLA. Section
107(a), 42 U.S.C. §9607(a), provides that liability may be imposed
upon:

>        (1) the owner and operator of ... a facility;
>
>        (2) any person who at the time of disposal of any
>        hazardous substance owned or operated any facility
>        at which such hazardous substances were disposed
>        of;
>
>        (3) any person who ... arranged for disposal or
>        treatment, or arranged with a transporter for
>        transport for disposal or treatment, of hazardous
>        substances owned or possessed by such person, by
>        any other party or entity, at any facility... owned

Civil No. 96-1969(JAG)                                          10

> or operated by another party or entity and
> containing such hazardous substances; and
>
> (4) any person who accepts or accepted any
> hazardous substances for transport to disposal or
> treatment facilities, incineration vessels or sites
> selected by that person, from which there is a
> release, or a threatened release which causes the
> incurrence of response costs, of a hazardous
> substance...

42 U.S.C. §9607(a). Inasmuch as PRPA has proffered no evidence

demonstrating, or even alleging, that Carreras was at any time the

"owner" of the Arecibo facility or that it arranged for delivery to

the facility of any hazardous substance, the Court needs only

consider whether Carreras can be held liable as an "operator" or

"transporter" as defined in CERCLA.

    1. Operator Liability.

    CERCLA's definition of "operator" lacks clarity in that it

defines the term simply as "any person ... operating such

facility." 42 U.S.C. §9601(20)(A).  Faced with such a circular

definition, the Supreme Court was forced to give the term its

"ordinary or natural meaning." See U.S. v. Bestfoods, 118 S.Ct.

1876, 1887 (1998).  The Court stated that,

> under CERCLA, an operator is simply someone who
> directs the workings of, manages, or conducts the
> affairs of a facility ...   [A]n operator must
> manage, direct, or conduct operations specifically
> related to pollution, that is, operations having to
> do with the leakage or disposal of hazardous waste,
> or decisions about compliance with environmental
> regulations.

Civil No. 96-1969(JAG)                                          11

Id.   The Sixth Circuit adopted an "actual control test" when determining operator liability under CERCLA. "The plain meaning of the term 'operator' as expounded upon in *Bestfoods* does, after all, require that [defendants] have performed some affirmative acts – that they 'operated' the site by 'direct[ing] the workings,' 'manag[ing]'or 'conduct[ing]' the affairs' – before they can be held responsible." U.S. v. Township of Brighton, 153 F.3d 307, 314 (6th Cir. 1998). The Court further states that "before one can be considered an 'operator' for CERCLA purposes, one must perform affirmative acts." Id.

From the evidence on record the Court can not conclude that Carreras ever acted as "operator" of the Arecibo facility as defined by the Supreme Court in Bestfoods. Carreras did make an effort to obtain control over the facility by purchasing from PCI, along with other improvements and inventory, the above-ground tank and by negotiating with PCI for the transfer of the leasehold to Carreras. The agreement, however, was never formalized due to PRPA's failure to issue its written approval as was required, thus, Carreras never obtained control over the facility and its improvements. Therefore, Carreras cannot be held liable as "operator" of the facility as defined in CERCLA.

    2. Transporter Liability.

    CERCLA defines "transporter" as "any person who accepts or accepted any hazardous substances for transport to disposal or

Civil No. 96-1969(JAG)                                    12

treatment facilities, incineration vessels or **sites selected by
such person**, from which there is a release..." 42 U.S.C.
§9607(a)(4) (emphasis supplied). It is important to note that the
definition, as the courts have consistently held, states that
transporters can only be held liable when transporting the
hazardous substance to, and not from, the disposal facility, and,
then, only when the transporter selected, or had substantial
influence in the selection process of, the site where the release
occurred.[2] "Under the unambiguous terms of Section 9607(a)(4) and
well-settled case law, a person cannot be liable as a transporter
unless that person actually selects the site." U.S. v. Petersen
Sand & Gravel, Inc., 806 F.Supp. 1346, 1356 (N.D.Ill. 1992)
(citations omitted). "As a matter of EPA policy, transporters will
not be sent notice letters nor have enforcement actions brought
against them as potentially responsible parties until it has been
determined that the transporter selected the disposal or treatment
facility or other site." U.S. v. Western Processing Company, Inc.,
756 F.Supp. 1416 (W.D.Was. 1991) (citations omitted).

The record shows that only two shipments of caustic soda were
transported to the facility, one on June 28, 1986, and the other on

---

[2]    A recent amendment to CERCLA also limits transporter
liability when the amount of hazardous substances transported is
less than 110 gallons of liquid materials or less than 200 pounds
of solid materials. P.L. 107-118, January 11, 2002, 115 Stat.
2356.

Civil No. 96-1969(JAG)                                          13

January 31, 1987. Carreras did not intervene or participate in either of these shipments. Carreras's involvement was limited to the transportation of caustic soda from the Arecibo facility to various locations in Puerto Rico for industrial use. There is no evidence of a release having occurred at any of these locations. Therefore, the Court finds that Carreras cannot be held liable as a "transporter" as defined in CERCLA.

3. <u>Carreras's Abandonment of the Facility.</u>

PRPA further claims that Carreras's abandonment of the site amounted to a "disposal" of the caustic soda. Inasmuch as Carreras was never an "owner" or "operator" of the Arecibo facility, PRPA's claim has no merit against Carreras. Carreras cannot abandon a facility it never owned or operated.

4. <u>Carreras's Third Party Defenses.</u>

Because Carreras's third party defenses are only available to persons designated as Potentially Responsible Persons under CERCLA, the Court need not discuss them.

5. <u>PRPA's Breach of Contract and Tort Claims.</u>

In the alternative, PRPA seeks damages from defendants under Puerto Rico's general tort statute and/or for breach of contract. Inasmuch as a contractual relationship never existed between Carreras and PRPA, breach of contract claims against Carreras are without merit.

✎AO 72A
(Rev. 8/82)

Civil No. 96-1969(JAG)                                                   14

    Furthermore, the Court finds that PRPA's tort claims are time
barred.  This complaint was filed in August of 1996, more than two
years after the caustic soda spill was first detected on January of
1994.  Any action brought under Puerto Rico's tort claim statute
must be filed within one year from the time the injured party had
knowledge of the damages.  <u>See</u> 31 P.R. Laws Ann. §5298.  The period
can be tolled if, during that year, the injured party makes any
extrajudicial claims.  <u>See</u> 31 P.R. Laws Ann. §5303.  No evidence
has been proffered that could convince the Court that the
limitations period was tolled in this case.  Because PRPA's tort
claims are time barred, they are also dismissed.

CONCLUSION

    For the foregoing reasons, Carreras's motion for summary
judgment is GRANTED.  PRPA's claims against Carreras are dismissed.
Partial judgment shall be entered accordingly.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 24th day of April 2002.


                            JAY A. GARCIA-GREGORY
                            United States District Judge